{¶ 1} This appeal is the result of decisions made by the Stark County Common Pleas Court, Domestic Relations Division, relative to property division and valuation and spousal support.
 STATEMENT OF FACTS {¶ 2} The parties to this appeal were married on April 30, 1977. Two children were born of such marriage, Anthony Jr. now emancipated, and Christiana, age 11. Christiana is developmentally affected due to possessing an extra No. 8 chromosome.
 {¶ 3} Custody and visitation as to such child is not an issue in this appeal as the asserted assignments relate solely to financial matters.
 {¶ 4} Appellant's accounting practice and other business interests produced a substantial income and standard of living for the family during its 25-year duration. Appellee has not been employed since the birth of their daughter, although prior to such birth, Appellee obtained a master's degree and held responsible positions with Mount Union College and subsequently with the University of Akron. Appellee is capable of obtaining employment due to her education and experience, according to Dr. Quinn. However, this will be affected by the needs required by Christiana.
 {¶ 5} Appellant raises five Assignments of Error:
 ASSIGNMENTS OF ERROR {¶ 6} "First Assignment Of Error: The Award Of Spousal Support Was Unreasonable And Inequitable, Where Its Amount And Duration Exceed What Is Required For Bridget Bagnola To Become Self-supporting; And Where The Award Of Spousal Support Will Require Dean Bagnola To Work Substantially More Than Forty (40) Hours Weekly For The Next Eight Years, Which Constitutes An unreasonable Servitude.
 {¶ 7} "Second Assignment Of Error: The Division Of Marital Property Was Unreasonable And Inequitable, Where Virtually All Of The Liquid, Easily Valued Property Was Awarded To Bridget Bagnola, And Virtually All Of The Award To Dean Bagnola Consisted Of Illiquid, Risky, And Difficult To Value Property.
 {¶ 8} "Third Assignment Of Error: The Judgment Was Unreasonable And Inequitable, Where The Division Of Marital Property Was Based On Business Valuations That Were Based On Dean Bagnola's Earned Income From Them, And The Award Of Spousal Support Was Also Based On The Same Earned Income, Thereby Resulting In A "Double Dip" For Bridget Bagnola.
 {¶ 9} "Fourth Assignment Of Error: The Trial Court Unreasonably And Unfairly Failed To Allow Sale Of Dean Bagnola's Interests In Smart Healthcare Services Corp. And D. A. Bagnola Company, Inc., Prior To Determining A Division Of Martial Property; Such Sale Would Have Provided The Truest Valuation Of These Interests, In Light Of The Grossly Conflicting Appraisals And In Light Of His Request For Such At Trial.
 {¶ 10} "Fifth Assignment Of Error: The Division Of Marital Property Was Unreasonable And Inequitable, Where It Was Based On The Unreasonably High Business Valuations Offered By Bridget Bagnola's Expert."
 I. {¶ 11} The First Assignment of Error objects to the spousal support awarded and asserts the novel constitutional argument that Appellant is thereby placed in involuntary servitude in order to meet the support payments. We disagree.
 {¶ 12} An award of spousal support and division of marital assets are each viewed by this Court under an abuse of discretion standard.Cherry v. Cherry (1981), 66 Ohio St.3d 348, Martin v. Martin (1985),18 Ohio St.3d 292.
 {¶ 13} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably, otherwise, we cannot substitute our judgment for that of the trial court. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128.
 {¶ 14} The applicable factors which the trial court was required to apply are contained in R.C. 3105.18:
 {¶ 15} "Award of spousal support; modification.
 {¶ 16} "(A) As used in this section, "spousal support" means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse. "Spousal support" does not include any payment made to a spouse or former spouse, or to a third party for the benefit of a spouse or former spouse, that is made as part of a division or distribution of property or a distributive award under section 3105.171 [3105.17.1] of the Revised Code.
 {¶ 17} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 [3105.17.1] of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party.
 {¶ 18} "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.
 {¶ 19} "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.
 {¶ 20} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 21} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 {¶ 22} "(b) The relative earning abilities of the parties;
 {¶ 23} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 24} "(d) The retirement benefits of the parties;
 {¶ 25} "(e) The duration of the marriage;
 {¶ 26} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 27} "(g) The standard of living of the parties established during the marriage;
 {¶ 28} "(h) The relative extent of education of the parties;
 {¶ 29} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 30} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 31} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 32} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 33} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 34} "(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 35} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income. "
 {¶ 36} The court considered the income of the parties from all sources, including rental income subsequent to the division of marital assets.
 {¶ 37} The earning abilities also were extensively reviewed. Appellant had produced substantial income from his accounting practice, D.A. Bagnola, and from his business interests in Monarch and Smart Health Care.
 {¶ 38} The respective ages of the parties, retirement benefits and twenty-five-year duration of the marriage as required by subsections (c), (d) and (e) of R.C. 3105.171 were considered by the trial court.
 {¶ 39} The standard of living, including expenses during marriage for the various forms of entertainment and vacations, along with the parties' monthly estimates, was reviewed carefully.
 {¶ 40} In fact, each of the required factors were extensively examined in reaching the various conclusions. While we cannot accept the concept of servitude presented by Appellant, we recognize that some expenditures customarily enjoyed will be curtailed. The rental income, of course, tends to obviate the necessity of burdensome working hours asserted relative to the monetary spousal support ordered.
 {¶ 41} Notwithstanding the division of assets providing a substantial financial base to Appellee, the court finds that spousal support, considering the factors of R.C. 3105.18, to be appropriate and reasonable. This meets the test of Kunkle v. Kunkle (1990),51 Ohio St.3d 64, wherein the court, after division of marital assets, must still determine if a need for spousal support still exists.
 {¶ 42} In conclusion, we find that under the totality of the evidence presented, no abuse of discretion warranting our interference with the court's decision as to spousal support occurred.
 {¶ 43} Appellant's First Assignment of Error is denied.
 II, III, IV AND V {¶ 44} The Second, Third and Fifth Assignments of Error and indirectly the Fourth Assignment question the division of martial assets.
 {¶ 45} As to the Second, Third and Fifth Assignments of Error, the controlling statutes are R.C. 3105.171(C)(1) and (F):
 {¶ 46} "(C)(1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
 {¶ 47} "(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 48} "(1) The duration of the marriage;
 {¶ 49} "(2) The assets and liabilities of the spouses;
 {¶ 50} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 51} "(4) The liquidity of the property to be distributed;
 {¶ 52} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 53} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 54} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 55} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 56} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 57} We shall divert our attention at this point to the Fourth Assignment which questions the court's denial of the requested authorization to sell D.A. Bagnola and Smart Health Care due to difficulty in evaluation.
 {¶ 58} As to valuation, while the experts used different methods of approaching the market worth of these companies and did differ as a result, neither Thomas Clevenger nor Mr. Trouten expressed an inability to render an opinion of value. The Court analyzed the methods of each to a very extensive degree with considerable explanations as to his acceptance and rejection of aspects thereof.
 {¶ 59} It must be remembered that we are not determining the court's opinions of the merits of the testimony, but rather, whether the court applied the statutory mandates and were the conclusions supported by competent, credible evidence.
 {¶ 60} Based upon the evidence presented and the thorough examination of the methods of each expert, we find that the court was well within its discretion in rejecting the requested sale.
 {¶ 61} Therefore, the Fourth Assignment of Error is not well taken.
 {¶ 62} The Second Assignment of Error fails in its conclusions in that not only is the court not required to divide marital assets based upon relative liquidity, but the testimony and the past income production from the business interests awarded to Appellant do not appear to be "risky" according to the testimony evaluated by the court.
 {¶ 63} We have addressed the asserted difficulty in valuation in our previous discussion of the Fourth Assignment.
 {¶ 64} The court attempted in this complicated scenario to divide the assets equally and found its conclusions to be equitable.
 {¶ 65} We find no abuse of discretion as to the Second Assignment of Error and reject such.
 {¶ 66} The Third Assignment of Error asserts the court's division of marital assets, being based on "earned income" of Appellant and utilization of the same figures for spousal support resulted in a "double dipping" for Appellee.
 {¶ 67} We must reject this argument.
 {¶ 68} Appellant's earned income from the three business ventures is inextricably tied to the valuations of each company and is necessarily a basis for determination of spousal support. Expert testimony from both parties produced data on these issues for the court's consideration. The court possesses wide latitude under the statutory guidelines to accept those portions of the respective experts opinions as it determines to be most credible McCoy v. McCoy (1993), 91 Ohio App.3d 570.
 {¶ 69} As stated previously, the court has the discretion to accept or reject any portion of an expert's valuation opinion. In the case sub judice, the court reviewed each microscopically in arriving at, in his judgment, an equitable division.
 {¶ 70} The Fifth Assignment his overruled.
 {¶ 71} This cause is affirmed at Appellant's costs.
By: Boggins, J., Gwin, P.J. and Farmer, J. concur.